UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE HOLLOWAY, aka DWAYNE HOLLOWAY,<br><br>　　　　　　　Petitioner,<br>v.<br><br>JOHN MARSHALL, Warden,<br><br>　　　　　　　Respondent. | Civil No. 06cv226 LAB (PCL)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING THE PETITION FOR WRIT OF HABEAS CORPUS** |

　　　This Report and Recommendation is submitted to United States District Judge Larry A. Burns, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

　　　On January 30, 2006, this Court received a Petition for Writ of Habeas Corpus ("Pet.") filed pursuant to 28 U.S.C. § 2254 by Wayne Holloway a/k/a Dwayne Holloway ("Petitioner"), a state prisoner proceeding pro se, from the Central District of California.  (Doc. No. 1)  On April 28, 2006, Respondent filed a motion to dismiss the Petition, which this Court denied on July 6, 2006.[1]  (Doc. Nos. 7-9 & 14)  On August 11, 2006, Respondent filed an Answer ("Ans.") and supporting Lodgments ("Lodg.").  (Doc. Nos. 16 & 17)  On September 8, 2006, Petitioner filed a Traverse ("Trav.") and

---

[1] Respondent's motion to dismiss argued that Petitioner's claims in the instant Petition were not exhausted.  After a thorough review of the record, this Court found Petitioner's claims exhausted, denied Respondent's motion, and set a schedule for briefing on the merits.  (Doc. Nos. 7-9 & 14)

supporting documents entitled Statement of the Evidence ("Statement"). (Doc. Nos. 18 & 19) Finally, on September 29, 2006, this case was transferred to Peter C. Lewis, Magistrate Judge, for a Report and Recommendation. (Doc. 20)

## II.
## STATE PROCEEDINGS

On February 18, 2003, Petitioner was charged in an information with one count of selling and furnishing cocaine base in violation of California Health and Safety Code[2] section 11352(a) (count one), and possession for sale, and purchase for purposes of sale, of cocaine base in violation of Health and Safety Code section 11351.5 (count two). (Lodg. 1 at 1-4) The information further alleged three prison priors each pursuant to Penal Code sections 667.5(b) and 668, and a strike prior pursuant to Penal Code sections 667(b)-(I), 1170.2, and 668. (Id.) On June 3, 2003, Petitioner waived his right to a jury trial and agreed to have his case submitted for decision by the trial judge based on the preliminary hearing transcript, a chemical analysis of the substance seized, and his testimony at the bench trial. (Id. at 55) The government moved to dismiss count two of the information, the possession charge, and the trial court found Petitioner guilty of count one, selling and furnishing cocaine base. (Id. at 55-56) The government also moved to incorporate the second prison prior with the first prison prior, leaving two prison priors. (Id. at 56) On September 5, 2003, Petitioner admitted the two prison priors and the strike prior. (Id. at 63) The trial court sentenced Petitioner to a total prison term of eight years. (Id.) Petitioner received three years for count one which was doubled due to the strike prior, and a one year consecutive term for each of the prison priors. (Id.)

On March 30, 2004, Petitioner appealed his conviction and sentence to the Court of Appeal, Fourth Appellate District, Division One. (Lodg. 2) On August 6, 2004, in an unpublished opinion, the Court of Appeal affirmed the judgment. (Lodg. 5) On September 13, 2004, Petitioner filed a petition for review with the California Supreme Court. (Lodg.6) On October 20, 2004, the California Supreme Court summarily denied the petition. (Lodg. 7)

On October 18, 2005, Petitioner filed a petition for writ of mandamus with the California

---

[2]Hereinafter, all references to the Health and Safety Code or the Penal Code will be to the California Codes.

Supreme Court, which was subsequently transferred to the Court of Appeal. (Lodg. 8)  On November 17, 2005, in an unpublished opinion, the Court of Appeal denied the petition on procedural grounds. (Lodg. 9)  On November 28, 2005, Petitioner filed a petition for review with the California Supreme Court. (Lodg. 10)  On January 4, 2006, the California Supreme Court summarily denied the petition. (Lodg. 11)

## III.

## UNDERLYING FACTS

On January 22, 2003, San Diego Police Officer Carol Beason ("Beason") was working undercover during a narcotics buy/bust operation near the intersection of Fifth and C Streets in downtown San Diego. (Lodg. 12 at 2)  At approximately 7:20 p.m., Petitioner was on foot looking for a liquor store, and decided to take the trolley to the Gaslamp district. (Lodg. 14 at 84)  As he approached the trolley, Beason stepped in front of him and smiled. (Id.; Lodg. 12 at 3)  She asked Petitioner "if he knew who was working," which is street slang for who is selling narcotics, and he asked what she was looking for. (Lodg. 12 at 3 & 4)  She told him that she "wanted a twenty," which is street slang for $20.00 worth of cocaine base. (Id.)  According to Beason's testimony, Petitioner responded that he could help her in exchange for some of the drugs, and Beason agreed. (Id. at 4 & 8)  According to Petitioner's testimony, at that point he only agreed to help her find the drugs. (Lodg. 14 at 86 & 87)

Petitioner and Beason walked eastbound on C street where Petitioner contacted a black male waiting at the trolley stop. (Lodg. 12 at 4)  After Petitioner spoke with the man, Beason gave Petitioner a $20.00 bill. (Id.)  Petitioner did not buy any cocaine base from that man because the drugs were not worth $20.00. (Id. at 4; Lodg. 14 at 86)  In other words, the man was trying to "rip" them off. (Lodg. 14 at 86)  Petitioner and Beason continued eastbound. (Lodg.12 at 4)  According to Petitioner's testimony, it was at this point that Beason offered to give him some of the drugs for his help. (Lodg. 14 at 87)  Since he was a cocaine user, Petitioner's motivation to help Beason was to keep some of the drugs for himself. (Id. at 91)  Beason also offered to smoke the drugs with him under the bridge, which Petitioner interpreted as a possible sexual encounter with Beason. (Id. at 95)  Petitioner testified that Beason never forced him, or did anything to make him, participate in this deal except smile and ask him for help. (Id. at 96)  It was enough for Petitioner that she was a young woman that offered to give him

1  some drugs and smoke it under the bridge.  (Id.)

2  Petitioner told Beason that "his boy," which is street slang for someone that Petitioner knows
3  sells narcotics, "would hook us up."  (Lodg. 12 at 4)  Petitioner testified that he had bought drugs before
4  in that area and knew who sold them.  (Lodg. 14 at 92-93)  At the corner of 7th and C street, Petitioner
5  told Beason to wait by a light post.  (Lodg. 12 at 4)  Petitioner did not want Beason to see that he was
6  going to take half of the drugs for himself.  (Lodg. 14 at 87)  He wanted to make sure, even though she
7  agreed to split it with him, that he got some for himself.  (Id.)  Petitioner walked about 50 feet away and
8  made contact with two black males that were sitting on a wall.  (Lodg. 12 at 4)  Beason testified that
9  Detective Dennis Davis, who was part of the surveillance unit, saw a hand-to-hand transaction between
10 Petitioner and one of the black males who was later identified as Joshua Weiss.  (Id. at 5)  Petitioner
11 testified that he approached Joshua Weiss, gave him the $20.00 bill, and Weiss gave him some cocaine.
12 (Lodg. 14 at 88)  According to Petitioner's testimony, he had bought drugs from Weiss before and
13 therefore knew that Weiss had drugs for sale.  (Id.)  According to Beason's testimony, Petitioner then
14 had what appeared to be another hand-to-hand transaction with a white male later identified as Otis
15 Anderson. (Lodg. 12 at 5)  According to Petitioner's testimony, Otis Anderson approached him and
16 asked him for change, so Petitioner gave the man a quarter.  (Lodg. 14 at 88)  Petitioner then returned to
17 Beason, gave her a piece of cocaine base, and was subsequently arrested.  (Lodg. 12 at 5)  Joshua Weiss
18 was pursued by officers and arrested.  (Id. at 10 &11)  He did not have the $20.00 bill on him.  (Id. at
19 10)  Otis Anderson was also stopped by police, and he did not have any drugs nor money on him.  (Id.)
20 The $20.00 bill was never recovered.  (Id.)

21 After Petitioner was arrested, Beason conducted an interview.  (Id. at 11)  During the interview,
22 Petitioner indicated that he was a drug addict.  (Id.)  He also stated that his sole purpose in helping her
23 get drugs was to supply his habit.  (Id.)

24 //
25 //
26 //
27 //
28 //

## IV.

## DISCUSSION

**1. Standard of Review**

Petitioner filed this Petition after the effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Normally, the AEDPA standard of review would then apply. See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.A. § 2254(d).

However, when adjudication on the merits in state court was not possible, for such reasons as procedural errors, AEDPA's standard of review does not apply. Killian v. Poole, 282 F.3d 1204 (9th Cir. 2002). In such a case, review by the federal court is de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); see Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005)(en banc)(noting that pre-AEDPA habeas review provides that "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution."). This Court will presume the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1); Pirtle v. Morgan, 313 F.3d 1160, 1168 (9th Cir. 2002).

Here, review of the dispositive state court order reveals that the state court's rejection of Petitioner's claims was on procedural grounds. (Lodg. 9 at 2) The court of appeal stated:

> There is no indication that Holloway sought relief on this issue in the first instance in superior court. (In re Steele (2004) 32 Cal.4th 682, 692.) More important, absent special circumstances, the failure to raise an issue on appeal generally precludes review by a postconviction, postappeal collateral attack on the judgment. (In re Harris (1993) 5 Cal.4th 813, 829.) Holloway has not shown special circumstances.

In re Harris holds that the state courts are precluded from reaching the merits of petitioner's claims in a state habeas petition when the claims were not previously raised on direct appeal. Here, Petitioner's claims were not brought to the state court on direct appeal. Thus, the state court could not reach the

merits of Petitioner's claims on collateral attack.[3]  See Pirtle, 313 F.3d at 1167.  Accordingly, this Court's review of the record with respect to the merits is de novo.

**2. Petitioner is not Entitled to Habeas Relief on the Basis of Claim One**

Petitioner's first claim is broken down into two sub claims: a) entrapment of a drug addicted defendant; and b) selective prosecution.

### A. *Entrapment of a Drug Addicted Defendant*

Petitioner claims that due process prohibits drug-addicted defendants such as himself from criminal conviction under the entrapment doctrine. (Pet. at 5; Trav. at 2)  Specifically, Petitioner contends that at the time of his arrest, he was "a habitual narcotics user" that was attempting to break his habit. (Pet. at 9)  Petitioner asserts that on the day of his arrest, he was not looking to buy drugs. (Pet. at 8)  Petitioner contends that the undercover officer lured him into furnishing her the rock cocaine with the promise of splitting part of the rock with him. (Pet. at 9; Trav. at 3)  Petitioner argues that the police officer's actions resulted in entrapment. (Id.)  Respondent claims that Petitioner, even if he was an addict, was not entrapped and was properly punished for his criminal conduct. (Ans. at 3)

Foremost, the United States Supreme Court has held that a drug addict cannot be punished for his status as an addict. Robinson v. California, 370 U.S. 660 (1962).  However, an offense is not a status crime if it is based on an underlying act which society has an interest in preventing. Powell v. State of Texas, 392 U.S. 514, 533 (1968); United States v. Cupa-Guillen, 34 F.3d 860, 863 (9th Cir. 1994); Budd v. Madigan, 418 F.2d 1032, 1034 (9th Cir. 1969).  Here, as Respondent correctly points out, Petitioner is not being punished for his condition as an addict but for his act of furnishing cocaine. Furnishing cocaine is a behavior that creates a substantial health and safety hazard which is punishable, even if the motivation to furnish the cocaine is caused by an addiction. See Powell, 392 U.S. at 533. Thus, even if Petitioner's addiction caused him to furnish the cocaine, Petitioner's punishment for the act was not in violation of his constitutional rights.

---

[3]Respondent contends that the scope of review is governed by Delgado v. Lewis, 232 F.3d 976, 982 (9th Cir. 2001).  Delgado holds that when there is no decision from the state court on the merits, federal courts conduct an independent review of the record.  When conducting an independent review of the record the district court gives deference to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, here the state court could not reach a decision on the merits due to a procedural error leaving nothing for the district court to defer to.  Therefore, this Court's review is de novo.

1    The Court now turns to whether Petitioner, because of his addiction, was entrapped by Beason
2 into furnishing her the cocaine.  In California, the test for entrapment is whether the conduct of the law
3 enforcement agent is likely to induce a normally law-abiding person to commit an offense.  People v.
4 Barraza, 23 Cal.3d 675, 689-90 (1979).  It is acceptable for a police officer to offer the simple
5 opportunity to act unlawfully, but it is unacceptable for the police officer "to pressure the suspect by
6 overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce
7 a normally law-abiding person to commit the crime."  Id. at 690.  It is also unacceptable for a police
8 officer to induce a normally law-abiding citizen "to commit the act because of friendship or sympathy,
9 instead of a desire for personal gain or other typical criminal purpose."  Id.

10    Petitioner argued the defense of entrapment to the trial court.  The trial court stated that "this is a
11 fairly typical scenario...for small quantity, street-sale situation." (Lodg. 14 at 98-99) "Based on the
12 evidence before [the court] it's fair to characterize Mr. Holloway's role as a facilitator." (Id. at 99)  The
13 trial court found that "put in context....the evidence falls far short of the legal defense of entrapment."
14 (Id.)

15    After reviewing the record, this Court finds that there is ample evidence to support the trial
16 court's findings.  In fact, the evidence shows that Petitioner acted out of personal gain, not out of
17 pressure from Beason.  Petitioner wanted part of the drugs and a possible sexual encounter.  Beason did
18 not cajole him into committing the crime, only smiled and asked Petitioner for help.  Beason provided
19 only the opportunity for Petitioner to commit the crime.  This is not a case where Petitioner was
20 desperately attempting to reform himself but was prevented from doing so by an overzealous police
21 officer who badgered him until his resistance was worn down and he was overcome.  Petitioner's claim
22 is that, at the time of his arrest he was a narcotics addict, attempting to quit.  However, there is no
23 evidence of how long he had been off drugs, or what steps he was taking to quit before the encounter
24 with Beason.  Petitioner also admitted that he had bought drugs many times in that area and knew
25 exactly who supplied them.  Overall, the evidence shows that Petitioner wanted to help Beason when
26 she smiled at him because he wanted part of the drugs for himself and a sexual encounter.  Nothing
27 contained in the record, nor in Petitioner's own testimony, suggests that Beason participated in the type
28 of unacceptable behavior that would rise to entrapment.  This Court agrees with the trial court's findings

that the evidence falls far short of the legal defense of entrapment.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief as to his claim of entrapment of a drug addicted defendant.

### B. *Selective Prosecution*

Petitioner contends that the principal perpetrator in this case, the person that actually sold Petitioner the drugs, Joshua Weiss, was never arrested, charged, nor prosecuted in connection with this case. (Pet. at 6) Petitioner asserts that because Weiss was not prosecuted, the district attorney's office subjected Petitioner to selective prosecution in violation of his Fifth and Fourteenth Amendment rights. (Id.; Trav. at 8-9) Petitioner claims that no deterrent effect for the crime of sale of narcotics occurred because the principal perpetrator in the case was not prosecuted. (Id.) Respondent contends that there is no evidence that Weiss was ever arrested which means the district attorney's office had no discretion whether to prosecute Weiss at all, and Petitioner presents no evidence of selective prosecution. (Opp. at 3)

In most cases, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." U.S. v. Armstrong, 517 U.S. 456, 464 (1996). This discretion is subject to constitutional restraints, and may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classifications," Id.

To establish impermissible selective prosecution, a defendant must show by clear evidence to the contrary that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive. Armstrong, 517 U.S. at 465; United States v. Wayte, 710 F.2d 1385, 1387 (9th Cir. 1983). However, courts are hesitant to examine the decision whether to prosecute, finding "such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Armstrong, 517 U.S. at 465. Also, "examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Id.

Here, Petitioner offers no evidence to suggest that the decision not to prosecute Weiss was based on a discriminatory motive to harm Petitioner. Petitioner's bare allegations to the contrary are without merit. The Court will not examine the decision of the general deterrence value for this crime since this is not readily susceptible to the kind of analysis this Court is competent to undertake. See Armstrong, 517 U.S. at 465. Thus, Petitioner has failed to make the required showing that his constitutional rights have been violated. Accordingly, the Court finds that Petitioner is not entitled to habeas relief as to his claim of selective prosecution.

*C. Conclusion*

After a de novo review of the record, for the reasons stated above, the Court finds that Petitioner is not entitled to habeas relief on the basis of Claim One.

**3. Petitioner is not Entitled to Habeas Relief on the Basis of Claim Two**

Petitioner's second claim is that the strike prior, a 1993 conviction for residential burglary, is invalid due to legal errors that occurred in 1993 during the read back of testimony by the court reporter to the jury while he was absent from the courtroom. (Pet. at 11; Trav. at 8) Petitioner argues that the use of the strike prior, which was unconstitutionally obtained, to enhance his current sentence entitles him to habeas relief. (Id.) Respondent claims that Petitioner is barred from arguing the constitutionality of his 1993 conviction in this federal habeas petition. (Ans. at 3) This Court agrees.

The United States Supreme Court has curtailed a petitioner's ability to collaterally attack a prior conviction used to enhance a present sentence. The Supreme Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. *If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.*

Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001)(citation omitted; emphasis added).

The Supreme Court found one exception to this rule:

> [W]e recognize an exception to the general rule for § 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...

Id. at 404.

Here, Petitioner is not attacking his 1993 conviction for failure to appoint counsel. Therefore, Petitioner's 1993 conviction is no longer open to attack in its own right and this Court must regard the conviction as conclusively valid. Id. Accordingly, the Court finds that Petitioner is not entitled to habeas relief on the basis of Claim Two.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS ORDERED** that no later than *December 22, 2006*, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *January 8, 2007*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: November 21, 2006

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Larry A. Burns
    All Counsel of Record